SCHRIMSHER OIL & GAS EXPLORATION, APPELLEE, *v.* STOLL ET AL., APPELLANTS.

(No. 1897—Decided May 16, 1984.)

*Frank Cicconetti,* for appellee.
*F. Emerson Logee,* for appellants.

MAHONEY, P.J. Carl and Hazel Stoll appeal a trial court order determining their interest in Kieffaber Well No. 1 to be 15.55 percent and dismissing their counterclaim for additional damages. We affirm.

Plaintiff-appellee, Schrimsher Oil & Gas Exploration (Schrimsher), is a partnership that produces and sells oil and natural gas. All of the defendants own land in Chippewa Township, Wayne County, Ohio, subject to oil and gas leases in favor of plaintiff. The leases obtained from defendants Kieffaber, Carraway and Jackson all contain unitization or pooling clauses which permit Schrimsher to assemble a twenty-acre drilling unit from the properties owned by these lessors. Pursuant to Ohio Adm. Code 1501:9-1-04 of the Department of Natural Resources, Division of Oil and Gas, wells of from two thousand to four thousand feet in depth must be located on twenty-acre units of land and must be drilled three hundred feet or more from the units' boundaries. The language of the unitization clauses in the Kieffaber, Carraway and Jackson leases anticipates that the lessors' properties will be pooled to form a drilling unit with the well (Kieffaber Well No. 1) located on the Kieffabers' property and that the lessors' one-eighth royalty interest will be divided in proportion to the number of acres contributed to the drilling unit by each landowner.

The Stolls' lease did not contain a unitization provision. Schrimsher originally contemplated drilling Kieffaber Well No. 1 on the Kieffabers' property more than three hundred feet south of the Stolls' boundary line. After the leases were signed, Schrimsher decided to locate Kieffaber Well No. 1 within fifty feet of the Stolls' property line. Defendants-appellants Carl and Hazel Stoll apparently were unaware of this change in plan until the drilling rig was actually installed within fifty feet of their line.

At that time, Carl Stoll protested the use of his acreage in the unitization plan. He, however, withdrew his protest and acquiesced in the new drilling site when Schrimsher promised to pay him a percentage of the well's royalty. Stoll testified that he agreed to the new site because he thought he would receive forty to forty-seven percent of the royalty based on the well's proximity to his property line. Schrimsher's agent testified that he intended to base the percentage on the amount of Stoll acreage contributed to the twenty-acre unit. Neither Schrimsher nor Stoll stated an exact percentage figure at the time the well was drilled. The trial court found that no agreement was ever reached as to the percentage of royalty.

After the well began producing, Schrimsher notified the Stolls that they would receive 15.55 percent of the

lessors' one-eighth royalty based on their contribution of 3.7 acres to the twenty-acre unit. The Stolls refused to sign a division agreement to that effect and to accept payment based on the 15.55 percent computation.

Schrimsher brought an action for a declaratory judgment to determine the percentage of the one-eighth royalty interest to which each defendant-landowner is entitled. The Stolls counterclaimed seeking damages arising from the illegal pooling of their property to form the drilling unit for Kieffaber Well No. 1. The trial court held that the Stolls are entitled to receive 15.55 percent of the lessors' royalty interest and dismissed their claim for additional damages.

Carl and Hazel Stoll appeal, contending:

### Assignment of Error

"The court erred in finding that appellants Carl V. Stoll and Hazel M. Stoll suffered no damage from the unauthorized and illegal inclusion of their land in a drilling unit, and in dismissing appellants' counterclaim for damages."

R.C. 1509.05 provides:

"No person shall drill a new well, drill an existing well any deeper, reopen a well, convert a well to any use other than its original purpose, or plug back a well to a source of supply different from the existing pool, without having a permit to do so issued by the chief of the division of oil and gas, and until the original permit or a photostatic copy thereof is posted or displayed in a conspicuous and easily accessible place at the well site, with the name, current address, and telephone number of the permit holder and the telephone numbers for fire and emergency medical services maintained on the posted permit or copy. The permit or a copy shall be continuously displayed in such manner at all times during the work authorized by the permit.

"Such permit shall be issued by the chief in accordance with the provision of Chapter 1509. of the Revised Code. The chief may by rule establish a period of time from date of issue during which permits will be valid."

R.C. 1509.26 states:

"The owners of adjoining tracts may agree to pool such tracts to form a drilling unit which conforms to the minimum acreage and distance requirements of the division of oil and gas under section 1509.24 or 1509.25 of the Revised Code. Such agreement shall be in writing, a copy of which shall be submitted to the division of oil and gas with the application for permit required by section 1509.05 of the Revised Code. Parties to the agreement shall designate one of their number as the applicant for such permit."

Schrimsher apparently submitted a map pursuant to R.C. 1509.26 indicating that the proposed drilling unit conformed to the acreage and distance requirements. This map included 3.7 acres of the appellants' property. However, Schrimsher failed to include the written pooling agreements of each property owner in the unit. The Chief of the Division of Oil and Gas apparently issued the drilling permit for Kieffaber Well No. 1 even though the required pooling agreements were missing.

Appellants argue that the permit was illegally obtained without their written consent. Even if true, the Stolls cannot now collaterally attack the issuance of the permit. Thus, the sole question raised in this appeal is the amount of compensation the appellants should receive for including 3.7 acres of their land in the drilling unit.

The Stolls contend that drilling Kieffaber Well No. 1 within fifty feet of their property line drains more oil from the Stolls' land than would have been drained if the well had been placed three hundred feet from their boundary. We agree. The principle set forth in *Kelley* v. *Ohio Oil Co.* (1897), 57 Ohio St. 317, namely that drilling an oil well near

one's property line does not interfere with the legal rights of the adjoining landowner so long as the operations are confined to the land on which the well is drilled, is clearly outmoded and has been superseded by the regulations limiting drilling based on R.C. Chapter 1509. The fact that Ohio Adm. Code 1501:9-1-04 requires a twenty-acre tract and a three hundred foot set back for wells of this depth indicates that an adjoining landowner can be damaged by the diminution of his mineral reserves by an adjacent well. Indeed, where the developer of the resource cannot comply with the division's area- and set-back requirements, the chief may limit the developer's production. See R.C. 1509.29.

In the instant case, Kieffaber Well No. 1 is not within the three hundred foot set-back requirement. Thus, the Stolls are entitled to some compensation for the diminution of their resource. R.C. 1509.27(D) provides for an equitable division of royalties when an adjacent owner is forced to pool his acreage to form a drilling unit. The trial court used this statutory formula to compute the Stolls' 15.55 percent share. Since the Stolls have provided no evidence to show that the drain exceeds 15.55 percent, we cannot say that the compensation ordered by the trial court is unreasonable or unlawful.

The Stolls could have sought relief through the Division of Oil and Gas when they learned that Schrimsher had obtained a permit without their written consent. Such relief could have included a capping of the well; a limitation on production; or, more likely, a mandatory pooling order. In any event, the Stolls would not have received a greater percentage of the royalty and could have received no portion of the well's production. Nor will they benefit directly if Schrimsher is prosecuted pursuant to R.C. 1509.33 and 1509.99.

The Stolls also contend that, because Schrimsher illegally utilized 3.7 acres of their land, they are prevented from drilling a third well wholly on their property. The record reveals that the lease includes 71.08 acres. Two wells have been drilled on the Stoll property, and the Stolls are receiving the full lessor's royalty from each well. Subtracting 43.7 acres (twenty acres for each Stoll well plus 3.7 acres pooled to drill Kieffaber Well No. 1) from 71.08 acres leaves 27.38 for development of a third well. Appellants have presented no evidence to indicate that a third well cannot be drilled on the remaining 27.38 acres. Similarly they did not produce evidence of a diminution in the value of their real estate.

We overrule appellants' assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

GEORGE, J., concurs.

QUILLIN, J., dissents.